UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: OTERO COUNTY HOSPITAL ASSOCIATION, INC.   No. 11-13686

Debtor.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Amended Motion for Extension of Time to File a Proof of Claim ("Motion to Extend Time") filed July 17, 2012 by Jo Ann Pinette, by and through her counsel, Pilar Tirado Murray. *See* Docket No. 663. Debtor Otero County Hospital Association, Inc. ("Otero") filed an objection to the Motion to Extend Time, by and through its counsel, White & Case, LLP (Roberto Kampfner, Ronald Gorsich, and Lauren Fujiu). *See* Docket No. 727. The Court held a final evidentiary hearing on the Motion to Extend Time on October 29, 2012, November 27, 2012, and November 28, 2012, and took the matter under advisement.

Ms. Pinette asks the Court for leave to file a late proof of claim under Fed.R.Bankr.P. 9006(b)(1). Ms. Pinette contends that her failure to file a proof of claim on or before December 21, 2011 (the "Claims Bar Date" or "Bar Date") was a result of excusable neglect. Otero counters that Ms. Pinette is not entitled to relief under Rule 9006(b)(1) because her failure to file a proof of claim was the result of a mistake of law rather than excusable neglect. After consideration of the Motion to Extend Time in light of applicable sections of the Bankruptcy Code, relevant case law, and the evidence presented at the final hearing, and being otherwise sufficiently informed, the Court concludes that Ms. Pinette's failure to file a proof of claim was not the result of excusable neglect. The Court will, therefore, deny the Motion to Extend Time.

FINDINGS OF FACT

Otero owns and operates a regional medical center in Alamogordo, New Mexico. Ms. Pinette, a resident of Alamogordo, was employed by Otero in its accounting department for several years until Otero terminated her employment on July 6, 2011. Before working for Otero, Ms. Pinette worked for the Internal Revenue Service for approximately 25 years in its tax audit department.

After Otero terminated Ms. Pinette's employment, in July and August 2011 she participated in Otero's internal grievance procedure. The final step of the grievance procedure involved a meeting on August 19, 2011 between Ms. Pinette and Otero's Chief Executive Officer ("CEO"), Mr. Hecker. Three days earlier, on August 16, 2011, Otero had filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 *et. seq*, thereby commencing this chapter 11 bankruptcy case (the "Chapter 11 Case"). During the August 19, 2011 meeting between Ms. Pinette and Mr. Hecker, there was a brief discussion of the bankruptcy filing. Mr. Hecker stated that claims against Otero arising from a back surgery procedure performed at the hospital triggered the filing of the bankruptcy case. This is in fact why Otero filed the Chapter 11 Case. There was no discussion about the effect of the bankruptcy case on Ms. Pinette's claim against Otero.

On August 14, 2011 and August 24, 2011, Ms. Pinette read articles in the local newspaper about Otero's bankruptcy filing or prospective filing. The articles, based in part on a press release issued by Otero, stated that the filing of the bankruptcy case was triggered by the assertion of multiple tort claims against Otero resulting from a back surgery procedure performed at the hospital. In July and August of 2011, Otero published a series of notices stating

2

that it had commenced the Chapter 11 Case in the local newspaper as well as newspapers in Albuquerque, New Mexico and El Paso, Texas.

On or about August 29, 2011, Ms. Pinette filed a charge ("EEOC Charge" or "charge") with the Equal Employment Opportunity Commission ("EEOC") claiming that Otero terminated her employment as the result of employment discrimination.[1] That claim arose prior to the commencement of the Chapter 11 Case. At the time she filed the charge, she wanted a monetary recovery from Otero as a result of its termination of her employment. Otero retained labor counsel to represent it in connection with Ms. Pinette EEOC Charge. Otero's labor counsel did not coordinate with Otero's bankruptcy counsel regarding the Chapter 11 Case.

On or about September 11, 2011, the EEOC sent Ms. Pinttee an Invitation to Mediate. Ms. Pinette agreed to mediate the EEOC Charge and returned the necessary paperwork to the EEOC shortly thereafter. Otero likewise returned the Invitation to Mediate form to the EEOC agreeing to mediate the charge. This had the effect of extending the due date for Otero's position statement to the EEOC relating to the charge.

On October 14, 2011, the Court entered an order (the "Bar Date Order") establishing December 21, 2011 at 4:00 p.m. prevailing Mountain Time as the deadline to file claims in the Chapter 11 Case.[2] A form of notice of the Claims Bar Date (the "Bar Date Notice") was attached as an exhibit to the Bar Date Order. By the Bar Date Order, Court also approved the form of the Bar Date Notice. The United States Trustee and the Official Committee of Unsecured Creditors approved the Bar Date Order.

---

[1] The Court excluded the evidence Ms. Pinette proffered on the merits of her employment discrimination claim. The Court has not heard evidence on or made any determination as to the merits of the claim. The Court will assume, solely for purposes of deciding the Motion, that the claim has merit.

[2] The exceptions to the applicability of the Claims Bar Date listed in the Bar Date Order are not applicable here.

3

Ms. Pinette received bankruptcy notices and other papers relating to the Chapter 11 Case in the mail. She had learned from reading newspaper articles about the Chapter 11 Case and from her brief conversation with Mr. Hecker that the bankruptcy case was filed as the result of claims against Otero arising from back surgeries performed at the hospital. She was aware that many residents of Alamogordo, New Mexico who were treated at the hospital were receiving bankruptcy notices. Ms. Pinette herself had been treated at Otero's emergency room. Ms. Pinette assumed she was receiving bankruptcy notices and other papers in the mail because of her visit to the emergency room at the hospital. She also assumed that the Chapter 11 Case would have no effect on her employment discrimination claim against Otero because it was not a tort claim arising from treatment at the hospital.

On October 20, 2011, Otero, through a service agent, mailed the Bar Date Notice with a proof of claim to some 80,000 persons alerting creditors, potential creditors, and other parties in interest, including Ms. Pinette. Ms. Pinette actually received the Bar Date Notice in the ordinary course within days after service. The Bar Date Notice: (1) provides clear and conspicuous notice of the December 21, 2011 Claims Bar Date; (2) states that a proof of claim must be filed by the Claims Bar Date, with limited exceptions not applicable here; (3) gives clear and conspicuous notice of the consequences of a failure to file a proof of claim by the Claims Bar Date (*i.e.* that the claim against Otero arising prior to the commencement of the Chapter 11 Case will be forever barred and the claimant will receive no payment or other distribution from Otero on account of the claim); (4) and explains how to file a proof of claim. Further, the Bar Date Notice gives the name and address of Otero's Claims Agent and encourages persons to call the Claims Agent with any questions about the Bar Date Notice or the Claims Bar Date.

4

Ms. Pinette did not pay close attention to the notices and other papers she received in the mail relating to the Chapter 11 Case and did not read the Bar Date Notice, except to glance at it. She did not read the Bar Date Notice because of her assumption that the Chapter 11 Case would not affect her because the case was commenced as the result of tort claims, whereas she had an employment discrimination claim against Otero.

Ms. Pinette spoke with an EEOC mediator in October 2011 and again in November 2011, and understood that a mediation of her EEOC Charge likely would take place in January 2012. Otero's labor counsel left a message with the EEOC in late November 2011 about dates for the mediation. On January 27, 2012, an EEOC mediator called Otero's labor counsel to follow up on the phone message he left in late November 2011 and to discuss mediation dates. During the conversation, labor counsel advised the mediator that Otero was not interested in paying money as part of a settlement. The mediator thereafter determined, based on his conversations with Ms. Pinette and Otero's labor counsel, that the parties were too far apart and that a mediation would not be fruitful. As a result, on or about February 9, 2012, the EEOC notified Ms. Pinette and Otero that Ms. Pinette's EEOC Charge was no longer in mediation. The EEOC fixed a new deadline for Otero to submit a position statement to the EEOC on the charge. Otero submitted its position statement to the EEOC on March 9, 2012 disputing the EEOC Charge. At that time, Otero's labor counsel was unaware of the Bar Date Order or the Claims Bar Date fixed by that order. On or about April 20, 2012, the EEOC issued to Ms. Pinette a notice advising her that the EEOC had dismissed the EECO Charge and that she had a right to file suit on her claim on or before July 19, 2012 ("Right to Sue Letter").

After receiving the Right to Sue Letter from the EEOC, Ms. Pinette undertook a search to retain counsel to represent her in a lawsuit against Otero to assert her employment discrimination

claim. Due to her inability to pay counsel, it took her a while to find counsel willing to represent her. In late June, 2012, Ms. Pinette retained Ms. Murray. After retaining counsel, Ms. Pinette was advised that she was required to file a proof of claim in the Chapter 11 Case by December 21, 2011 to preserve her claim. On July 17, 2012, Ms. Pinette filed the Motion to Extend Time, seeking an extension of the December 21, 2012 Claims Bar Date to make her proof of claim timely.

On June 20, 2012, Otero filed its third amended plan of reorganization ("Plan") and a related disclosure statement. On June 21, 2012, the Court entered an order approving the disclosure statement and establishing procedures relating to confirmation of the plan.[3] The Court fixed July 26, 2012 as the deadline to cast ballots to assume or reject the Plan and to object to the Plan. On June 25, 2012, notice of the deadline to object to the Plan and to vote to accept or reject the Plan, together with the Court approved disclosure statement, the Plan, and a ballot, were mailed to some 80,000 recipients, including Ms. Pinette. Following a confirmation hearing held August 3, 2012, the Court entered an order confirming a fourth amended plan, which contained non-material modifications to the third amended plan. Under the terms of the confirmed plan, Otero will pay Ms. Penette's claim in full if and to the extent her claim is allowed.

Except for Ms. Pinette's brief conversation with Mr. Hecker on August 19, 2012 about the bankruptcy filing, Ms. Pinette had no discussions or other communications with any representatives of Otero about the Chapter 11 Case. Ms. Pinette had no communications with any representative or agent of Otero about the Bar Date Notice, the Claims Bar Date, or the

---

[3] The Court had approved a series of amended disclosure statements prior to June 21, 2012 on the condition that Otero make several non-material changes. When Otero filed its third amended plan and the related disclosure statement on June 20, 2012, the Court determined that Otero had made the required non-material changes and approved the disclosure statement without further notice.

6

effect of the Chapter 11 Case on her employment discrimination claim. Otero did nothing calculated or intended to mislead Ms. Pinette about the effect of the Chapter 11 Case on her employment discrimination claim or about the Claims Bar Date.

Prior to the final hearing on Ms. Pinette's Motion to Extend Time, Ms. Pinette disputed that she received the Bar Date Notice. As a result, Otero called its Claims and Servicing Agent as a witness to testify about service of the Bar Date Notice. On the first day of the hearing, counsel for Ms. Pinette examined Ms. Pinette. Ms. Pinette testified that she received various papers in the mail relating to the Chapter 11 Case but did not recall receiving a bar date notice or a notice fixing a deadline for filing claims. The Court thereafter heard testimony from Otero's Claims and Servicing Agent on the first day of the hearing, out of order, because she had flown in from out of state and otherwise would have to make a second trip to Albuquerque to testify. Counsel for Ms. Pinette, on cross examination, attempted to impeach the Claims and Servicing Agent's testimony about service of the Bar Date Notice on Ms. Pinette. On the second day of the hearing, held approximately a month later, Ms. Pinette admitted on cross examination that she in fact did receive the Bar Date Notice in the mail.

DISCUSSION

Ms. Pinette contends that she should be granted an extension of time to file a proof of claim under Fed.R.Bankr.P. 9006(b)(1) because she was confused about the significance of the bankruptcy case on her claim against Otero. More specifically, Ms. Pinette asserts that she did not timely file a proof of claim because: (1) she failed to grasp the import of the Claims Bar Date; (2) she was misled by a newspaper article stating that the purpose of the Chapter 11 Case was to address medical malpractice claims; and (3) Otero and its representatives led her to believe that she could pursue her claim notwithstanding the pending bankruptcy case.

7

Pursuant to Rule 9006(b)(1), a movant has the burden of establishing "excusable neglect" in order to obtain permission to file a proof of claim after the claims bar date. That rule provides, in relevant part:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion … on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1).

The leading case examining "excusable neglect" under Rule 9006(b)(1) is *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer*, the bankruptcy court entered an order setting a bar date for filing proofs of claim against Pioneer. *Pioneer*, 507 U.S. at 383-84, 113 S.Ct. at 1492. Although the respondents received the notice, they failed to file a proof of claim on or before the bar date. *Id.* at 384, 113 S.Ct. at 1492. The respondents asserted that their attorney was not aware of the bar date because "he was experiencing a major and significant disruption in his professional life caused by his withdrawal from his former law firm." *Id.* (internal quotations omitted). The Supreme Court found that the respondents' neglect was excusable because the bar date notice was buried in a notice regarding a creditors' meeting. *Id.* at 389, 113 S.Ct. at 1500.

Under *Pioneer,* the Court must engage in a two-part inquiry to determine whether excusable neglect exists. First, the Court must examine whether Ms. Pinette's failure to file a proof of claim timely was the result of neglect. If the Court is satisfied that the delay was the result of neglect, the Court must determine whether the delay was excusable. The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. Factors to

8

consider in determining whether a party's neglect is excusable include: "[1]the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Biodiversity Conversation Alliance v. Bureau of Land Management*, 2011 WL 3734199, *2 (10th Cir. Aug. 25, 2011) (citing *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489). The *Pioneer* factors do not necessarily carry equal weight; the reason for the delay, and in particular whether the movant was at fault, typically is the most important factor. *See U.S. v. Torres,* 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable.") (internal quotations omitted).[4]

    1.    <u>Neglect</u>

Neglect can take the form of "inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388, 113 S.Ct. at 1495. However, the neglect cannot be the result of deliberate or tactical choices. *See Ghamrawi v. Case & Assoc. Props. Inc.,* 2004 WL 2476459, * 4 (10th Cir. Nov. 4, 2004) (holding that excusable neglect does not exist where the movant consciously disregarded a deadline because of a heavy caseload); *In re Banco Latino Int'l,* 310 B.R. 780, 785 (S.D.Fla.2004) ("[I]t is well established that 'where a party's actions are deliberate, the party's late filing cannot constitute excusable neglect.") (internal quotations omitted). Here, Ms. Pinette failed to file a proof of claim timely because of her mistaken belief that the Chapter 11 Case did not affect her claim. Such a failure constitutes neglect.

---

[4] *See also Hamilton v. Water Whole Intern. Corp.,* 2008 WL 5169399, * 7 (10th Cir. Dec. 10, 2008) (noting that under Pinoneer, "[t]he reason for delay is an important, if not the most important, factor in this analysis"); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 5 (1st Cir.2001) (same); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir.2000) (same).

### 2. Whether the Neglect Is Excusable.

Applying the *Pioneer* factors relevant to the facts of this case, the Court concludes that Ms. Pinette's failure to timely file a proof of claim was not the result of excusable neglect.

#### a. *Reason for Delay, Including Whether Ms. Pinette is at Fault*

Ms. Pinette's delay in filing a proof of claim in the Chapter 11 Case resulted from a mistake of law on her part; she believed that the Claims Bar Date did not apply to her. Generally, "[a] mistake of law does not constitute excusable neglect." *In re Farmland Indus. Inc.,* 318 B.R. 159, 165 (Bankr.W.D.Mo. 2004).[5] The Tenth Circuit Court of Appeals addressed this issue in *U.S. v. Torres*, 372 F.3d 1159 (10th Cir. 2004). There, the movant failed to timely file a notice of appeal after his client was convicted on a drug charge. *Id.* at 1160. The reason for the delay was that his counsel misunderstood the rules governing civil and criminal appeals. *Id.* at 1163. The Tenth Circuit found that the district court abused its discretion in determining that such a mistake was the result of excusable neglect. *Id.* In doing so, the Tenth Circuit noted that "the excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *Id.* (internal citations omitted).

Here, the Bar Date Notice stated in a conspicuous and clear manner that it applied to all claims against Otero arising prior to commencement of the Chapter 11 Case, including claims that are the subject of ongoing litigation with Otero. The Bar Date Notice also stated in a conspicuous and clear manner the consequences of failing to timely file a claim (*i.e.* that the claim would be forever barred, and the claimant would receive no payment or other distribution from Otero). Under *Torres,* Ms. Pinette's failure to read or comprehend the language of the Bar Date Notice ordinarily could not constitute excusable neglect. However, Ms. Pinette contends

---

[5] *See also Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489 (noting that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect").

10

that Otero is responsible for her confusion regarding the applicability of the Bar Date Notice to her claim. If that were true, it would mitigate against application of the general rule that a mistake of law does not constitute excusable neglect

Ms. Pinette contends that Otero is responsible for her confusion regarding the applicability of the Bar Date Notice to her claim because: (1) Otero issued a misleading press release in connection with its commencement of the Chapter 11 Case; (2) Otero's CEO misled her; and (3) Otero prolonged mediation of the EEOC Charge to lull her into inaction in filing a proof of claim. The Court will address each of these contentions.

There is no evidence before the Court that Otero issued any misleading press releases relating to its Chapter 11 Case. Ms. Pinette read a local newspaper article stating that Otero filed its bankruptcy case as the result of numerous lawsuits stemming from a back surgery procedure performed at Otero's hospital. She then assumed that the bankruptcy case did not apply to her because her claim was not a medical malpractice claim. The newspaper article was based at least in part on a press release issued by Otero. Otero's press release was accurate and was not misleading. The Chapter 11 Case was in fact filed as the result of numerous lawsuits stemming from the back surgery procedure. Based on this newspaper article, it was not reasonable for Ms. Pinette simply to ignore the various legal papers Otero served on her as a potential creditor, including the Bar Date Notice. *Cf. Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir.2000) ("A misunderstanding that occurs because a party … elects to read the clear, unambiguous terms of a judicial decree through rose-colored glasses cannot constitute excusable neglect.").

Ms. Pinette's contention that Otero's CEO misled her regarding the Claims Bar Date likewise is without merit. In August of 2011, when the CEO met with Ms. Pinette as part of Otero's internal grievance procedure relating to her employment discrimination claim, there was

11

a very brief discussion of the Chapter 11 filing. Ms. Pinette initiated the discussion by asking about the Chapter 11 filing. Mr. Hecker told her nothing more than what was stated in the newspaper article. He did nothing designed to mislead Ms. Pinette or that reasonably would have misled her.

Finally, Ms. Pinette's assertion that Otero intentionally prolonged the mediation process relating to her EEOC Charge to lull her into missing the Claims Bar Date has no merit. The EEOC was responsible for initiating and scheduling the mediation, not Otero. Neither counsel for Otero nor any other Otero representative ever communicated with Ms. Pinette in regard to mediation of her EEOC Charge. Ms. Pinette takes particular exception to the fact that Otero initially agreed to mediate before the Claims Bar Date but, according to Ms. Pinette, refused to continue with the mediation process after the Claims Bar Date had passed. However, it was the EEOC mediator who decided to terminate the mediation process after discussions with Ms. Pinette and Otero's labor counsel that occurred *after* the Claims Bar Date. Further, Otero's labor counsel, who did discuss the mediation with the EEOC mediator, was unaware of the Claims Bar Date at the time of those discussions. Nothing prevented Ms. Pinette from filing a proof of claim in the Chapter 11 Case prior to expiration of the Claims Bar Date to preserve her claim.

Ms. Pinette testified that she was not aware that the Claims Bar Date even applied to her employment discrimination claim until July of 2012 after she retained counsel. Ms. Pinette's failure to read the Bar Date Notice, even though she was unrepresented at the time, does not excuse her from filing a claim by the Claims Bar Date.

      b.    *Length of Delay*

Ms. Pinette delayed some eight and a half months after receiving the Bar Date Notice, and some six and half months after the Claims Bar Date, before filing her Motion to Extend

Time. She had actual knowledge of the Chapter 11 filing from reading newspaper articles around the time the Chapter 11 Case was commenced. The length of delay weighs against the requested extension of the time for filing a proof of claim. *See, e.g., Marcus Food Co. v. Dipanfilo,* 671 F.3d 1159, 1172 (10th Cir. 2011) (district court did not abuse its discretion in concluding that petitioner did not demonstrate excusable neglect because he could not explain why he waited over three months to respond to a motion); *Schupper v. Edie¸* 2006 WL 2053769, *2 (10th Cir. July 25, 2006) (affirming trial court's finding that petition's untimely amended complaint was not the result of excusable neglect because it was filed nearly five months after the deadline); *Segura v. Workman*, 2009 WL 3448840, *2 (10th Cir. Oct. 28, 2009) (affirming trial court's finding that petitioner's failure to respond to a district court order for seven months was not a result of excusable neglect).

   *c. Prejudice to Otero*

The factor addressing the prejudice to the debtor also weighs against the Court granting the relief Ms. Pinette seeks. In order to achieve a successful reorganization, a debtor must be able to "know, reasonably promptly, what parties are making claims against the estate and in what general amounts." *In re Kolstad,* 928 F.2d 171, 173 (5th Cir. 1991). The claims bar date therefore serves an essential role in bankruptcy proceedings. As the Second Circuit Court of Appeals explained:

> [A] bar order does not function merely as a procedural gauntlet, but as an integral part of the reorganization process. If individual creditors were permitted to postpone indefinitely the effect of a bar order ... the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.

*In re Enron Corp.,* 419 F.3d 115, 128-129 (2nd Cir. 2005) (quoting *In re Hooker Inves. Inc.,* 937 F.2d 833, 840 (2nd Cir. 1991)).

Otero, at considerable expense, retained a Claims and Servicing Agent, and served not only the Bar Date Notice but also certain other papers filed in the Chapter 11 Case, including the plan and disclosure statement, on some 80,000 claimants and potential claimants. Otero expended that effort and expense so that it could address any and all outstanding claims through a confirmed plan and rely on the Claims Bar Date and a confirmed plan to discharge any claims that were not timely filed. Ms. Pinette did not file the Motion to Extend Time until after Otero filed its plan and disclosure statement. The plan and disclosure statement were formulated in reliance on the Claims Bar Date. Ms. Pinette did not object to the plan and disclosure statement or otherwise participate in the confirmation proceedings, despite the fact that the plan package was served on all potential creditors in June 2012. It would therefore be prejudicial to Otero to allow Ms. Pinette to file a late claim.

        d.      *Whether Ms. Pinette Acted in Good Faith.*

The final factor relating to good faith also weighs against granting the Motion to Extend Time. The Court is convinced that Ms. Pinette believed in good faith that the bankruptcy proceedings did not apply to her employment discrimination claim against Otero. However, some of her other behavior in connection with the Motion to Extend Time does not constitute good faith. Initially, there was quite a bit of dispute about whether Ms. Pinette received the Bar Date Notice. The parties briefed the issue extensively before the final hearing. In addition, much of the first day of the final hearing was dedicated to questioning witnesses about whether the Bar Date Notice was properly served. Otero, at substantial expense, was required to call a servicing agent who travelled from California to testify. On the second day of the final hearing, Ms. Pinette admitted that she received the Bar Date Notice. The Court is inclined to give Ms. Pinette the benefit of the doubt when she initially testified that she did not recall receiving the

14

Bar Date Notice. However, Ms. Pinette should have reviewed her records before the final hearing to determine whether she had in fact received the Bar Date Notice. Upon discovering she received it, Ms. Pinette should not have made receipt of the Bar Date Notice a trial issue. The Court therefore concludes that the factor addressing good faith weighs against Ms. Pinette.

CONCLUSION

Based on the foregoing, the Court finds that all of the *Pioneer* factors, including the reason for delay, the length of delay, the prejudice to the nonmoving party, and good faith, weigh against granting the relief Ms. Pinette seeks. The Court has given particular weight to factor addressing the reason for delay. The Court concludes that Ms. Pinette is not entitled to relief under Rule 9006(b)(1) because her failure to timely file a proof of claim was not the result of excusable neglect. The Court will, therefore, deny Ms. Pinette's Motion to Extend Time.

The Court will enter an order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: January 4, 2013
COPY TO:

Pilar Tirado Murray
Attorney for Jo Ann M. Pinette
1111 10th Street, Box 482
Alamogordo, NM 88310

Roberto J. Kampfner , Lauren Fujiu, & Ronald Gorsich
White & Case, LLP
Attorney for Debtor
633 West 5th St. Ste 1900
Los Angeles, CA 90071

15