**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:  OTERO COUNTY HOSPITAL ASSOCIATION, INC.                   No. 11-13686
d/b/a Gerald Champion Regional Medical Center, d/b/a
Mountain View Catering

Debtor.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on the Debtor's Motion for Summary Judgment on

Claim No. 280 Filed by Claimant Jacqueline Collins (the "Motion" or "Motion for Summary

Judgment"). *See* Docket Nos. 1110 and 1113. Debtor Otero County Hospital Association, Inc.

("Otero") contends that Jacqueline Collins' employment discrimination claim against it should

be disallowed as a matter of law because Otero was not Ms. Collins' employer at the time of her

separation. Ms. Collins filed a response and a supplemental response to the Motion for

Summary Judgment.[1] *See* Docket Nos. 1127 and 1171. After considering the Motion for

Summary Judgment, the responses, the supporting papers, and applicable law, and being

otherwise sufficiently informed, the Court concludes Ms. Collins' employment discrimination

claim against Otero should be disallowed.

SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no

genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of

law. *See* Fed.R.Civ.P. 56(a), made applicable to contested matters by Fed.R.Bankr.P. 7056 and

---

[1] In her initial response, Ms. Collins made arguments regarding certain facts and exhibits that did not
appear in either party's statement of undisputed material facts. By an order entered November 18, 2013,
the Court permitted Ms. Collins to supplement her response to include an additional statement of facts.
*See* Docket No. 1169. In its reply to Ms. Collins' supplemental response, Otero admitted all of Ms.
Collins' proffered facts for purposes of this decision only. *See* Docket No. 1172.

9014. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

FACTS NOT SUBJECT TO GENUINE DISPUTE[2]

1.     Otero owns and operates a hospital in Alamogordo, New Mexico known as Gerald Champion Regional Medical Center, or GCRMC. *See generally* Otero's Motion for Summary Judgment; Ms. Collins' Response to Debtor's Motion for Summary Judgment (Docket No. 1127) (the "Response").

2.     Ms. Collins worked for Otero as a registered nurse until March 2007, at which time she tendered her resignation to seek employment with Scenic View Outpatient Surgery Center ("Scenic View"). *See* Otero's Motion for Summary Judgment, ¶ 1; Ms. Collins' Response, ¶ 1.

3.     Scenic View is a medical center which performs outpatient surgeries in Alamogordo, NM. *See generally* Otero's Motion for Summary Judgment; Ms. Collins'

---

[2] Otero admitted many of Ms. Collins' proffered facts solely for purposes of this ruling on the basis that such facts are not material to the joint or single employer analysis. The following facts are therefore accepted as true only for purposes of the decision on the Motion for Summary Judgment.

2

Response.  Scenic View is wholly owned by Alamogordo Surgery Ventures, LLC ("ASV"), a limited liability company organized under the laws of New Mexico.  *See* Otero's Motion for Summary Judgment, ¶ 6; Ms. Collins' Response, ¶ 6.

4.      Ms. Collins resigned from Otero, at least in part, because she was having problems with her supervisor, believed that Scenic View would be a more desirable place to work, and knew that she would receive higher compensation working for Scenic View.  *See* Otero's Motion for Summary Judgment, ¶ 2; Ms. Collins' Response, ¶ 2.

5.      After resigning from Otero, Ms. Collins applied for a position with Scenic View and was hired as a Scenic View employee in March 2007.  *See* Otero's Motion for Summary Judgment, ¶ 3; Ms. Collins' Response, ¶ 3.

6.      After Ms. Collins began working for Scenic View, ASV issued all of her paychecks.  *See* Otero's Motion for Summary Judgment, ¶ 14; Ms. Collins' Response, ¶ 14.  ASV was also identified as Ms. Collins' employer on all W-2 tax forms issued during her employment with Scenic View.  *Id.*  ASV has its own employer identification number issued by the Internal Revenue Service ("IRS").  *Id.*

7.      While employed by Scenic View, ASV's management made all decisions regarding Ms. Collins' work duties, assignments, compensation, hours, and health, vision, dental, and disability insurance benefits.  *See* Otero's Motion for Summary Judgment, ¶ 22; Affidavit of Jim Baker attached to Otero's Motion for Summary Judgment as Exhibit B (Docket No. 1113-2) (the "Baker Affidavit"), ¶ 11.  Otero's management did not participate in any of those decisions.  *Id.*

8.     Jody Beyen, the nursing supervisor employed by Scenic View, was responsible for setting Ms. Collins' work schedule and approving Ms. Collins' leave time. *See* Otero's Motion for Summary Judgment, ¶ 16; Ms. Collins' Response, ¶ 16.

9.     Ms. Beyen and Jim Baker, the director and administrator of Scenic View, were responsible for evaluating Ms. Collins' job performance and imposing any disciplinary action on Ms. Collins. *See* Otero's Motion for Summary Judgment, ¶ 19; Deposition of Jacqueline Collins taken July 25, 2011, attached to Otero's Motion for Summary Judgment as Exhibit C (Docket No. 1113-3) (the "Collins Deposition") at 8:15 - 11:5.

10.     Otero's Human Resources department does not oversee any Scenic View employees. *See* Otero's Motion for Summary Judgment, ¶ 15; Ms. Collins' Response, ¶ 15.

11.     Karen O'Brien, the Director of Human Resources for Otero, participates in all hiring and termination decisions for employees of Otero. *See* Otero's Motion for Summary Judgment, ¶ 4; Ms. Collins' Response, ¶ 4. Ms. O'Brien did not participate in the decision to hire Ms. Collins to work for Scenic View or in any decision that led to her separation from Scenic View. *Id.*

12.     After Ms. Collins resigned from Otero and during the time Ms. Collins was employed by Scenic View, Otero did not:

(a) Determine her assignments, work hours, or schedule in connection with her work for Scenic View;[3]

(b) Conduct any type of performance evaluation of Ms. Collins;[4]

(c) Control her health, vision, dental, or disability insurance benefits;[5] or

---

[3] *See* Otero's Motion for Summary Judgment, ¶ 16; Ms. Collins' Response, ¶ 16.
[4] *See* Otero's Motion for Summary Judgment, ¶ 19; Collins Deposition at 8:15 - 9:2; Affidavit of Karen O'Brien attached to Otero's Motion for Summary Judgment as Exhibit A (Docket No. 1113-1) (the "O'Brien Affidavit"), ¶ 14.
[5] *See* Otero's Motion for Summary Judgment, ¶ 18; O'Brien Affidavit, ¶ 13.

4

(d) Determine whether, and to what extent, she was entitled to leave time.[6]

13.     Ms. Collins continued to work for Scenic View until her separation in 2009.  *See* Otero's Motion for Summary Judgment, ¶ 5; Ms. Collins' Response, ¶ 5.

14.     Otero did not terminate Ms. Collins' employment with Scenic View, nor did it have the right to do so.  *See* Otero's Motion for Summary Judgment, ¶ 23; O'Brien Affidavit, ¶ 22; Baker Affidavit, ¶ 13.

15.     Otero is housed in at least three buildings on a 65-acre medical campus.  *See* Otero's Motion for Summary Judgment. ¶ 8; Ms. Collins' Response, ¶ 8; Ms. Collins' Supplement to her Response to Debtor's Motion for Summary Judgment (Docket No. 1171) (the "Supplemental Response"), ¶ 22; Otero's Supplemental Reply in Support of its Motion for Summary Judgment (Docket No. 1172) (the "Supplemental Reply"), p. 1.  The first building houses the hospital.  *See* Ms. Collins' Supplemental Response, ¶ 22; Otero's Supplemental Reply, p. 1.  Scenic View is located in the third building, which features the name "Gerald Champion-Complex B" directly above its main entrance (hereinafter "Complex B").  *Id.* Complex B also houses Otero's billing and Human Resources departments.  *See* Ms. Collins' Supplemental Response, ¶ 23; Otero's Supplemental Reply, p. 1.

16.     Scenic View and Otero each have their own separate physical address.  *See* Otero's Motion for Summary Judgment, ¶ 8; Ms. Collins' Response, ¶ 8.

17.     ASV has leased the Scenic View facility from Otero since November 2006 at an annual rate of $456,680.00.  *Id*.

18.     Other tenants that lease space on the Otero campus include Alamogordo Imaging Center, Fresenius Renal Care Group, Interventional Pain Management, Otero Community Cancer Center, Dr. Sungho Jun, Dr. Allan L. Paul, Dr. Ferial Abood, Dr. Robert Smaltz, and the

---

[6] *See* Otero's Motion for Summary Judgment, ¶ 17; O'Brien Affidavit, ¶ 11.

5

CHINS Daycare Center.  *See* Otero's Motion for Summary Judgment, ¶ 9; Ms. Collins'

Response, ¶ 9.

19.    In August 2009, the persons and entities holding an ownership interest in ASV
included:

   (a) Jim Baker (2.5%);
   (b) Gregory Richardson, M.D. (8%);
   (c) William Pollard. M.D. (6.5%);
   (d) Dennis Worthington, M.D. (2.5%);
   (e) Frank Bryant, M.D. (5%);
   (f) Robert Smaltz, M.D. (2.5%);
   (g) Interventional Management Services, LLC (27.5%);
   (h) Ruthven Sampath, M.D. (5%); and
   (i) Otero (40.5%).

*See* Otero's Motion for Summary Judgment, ¶ 7; Ms. Collins' Response, ¶ 7.

20.    ASV is governed by its own Board of Managers.  *See* Otero's Motion for

Summary Judgment, ¶ 10; Ms. Collins' Response, ¶ 10.

21.    At the time of Ms. Collins' termination, Jim Baker served as the director and

administrator of Scenic View and the Director of Surgery Services for Otero.  *See* Ms. Collins'

Supplemental Response, ¶ 24; Otero's Supplemental Reply, p. 1.

22.    ASV and Otero employ separate accounting firms.  *See* Otero's Motion for

Summary Judgment, ¶ 10; Ms. Collins' Response, ¶ 10.  ASV's accounting and consulting group

provides independent bookkeeping and payroll services for Scenic View.  *Id.*

23.    Otero does not pay any of the bills, indebtedness, liabilities, or obligations of

ASV, nor does ASV pay any of the bills, indebtedness, liabilities, or obligations of Otero.  *See*

Otero's Motion for Summary Judgment, ¶ 13; Baker Affidavit, ¶ 9.

24.    ASV provides health, vision, dental, and disability insurance benefits for its

employees under policies that are separate from any such benefits Otero may provide to its

6

employees. *See* Otero's Motion for Summary Judgment, ¶ 11; Baker Affidavit, ¶ 8. Otero does not contribute financially to the health, vision, dental, or disability insurance benefits provided by Scenic View. *Id.*

25.     While employed by Scenic View, Ms. Collins' 401K plan was administered by Otero. *See* Ms. Collins' Supplemental Response, ¶ 4; Otero's Supplemental Reply, p. 1. ASV made all employer contributions to the plan. *See* Otero's Motion for Summary Judgment, ¶ 12; Ms. Collins' Response, ¶ 12.

26.     During the time Ms. Collins worked for Scenic View, Scenic View employees were entitled to take advantage of the following discounts available to Otero employees:

> (a)  An employee discount at Otero's cafeteria;
> (b)  A 22% discount on cell phone service provided by Verizon Wireless;
> (c)  An employee discount at Premier Fitness in Alamogordo, New Mexico; and
> (d)  An employee discount at Perfect Look, a uniform supply store in Alamogordo, New Mexico.

*See* Ms. Collins' Supplemental Response, ¶¶ 5-8; Otero's Supplemental Reply, p. 1.

27.     During the time Ms. Collins worked for Scenic View, Otero and Scenic View shared the following services and/or operations:

> (a)  Otero and Scenic View shared medical and surgical equipment on numerous occasions each week, and Scenic View's staff would occasionally reschedule appointments to accommodate such sharing.
>
> (b)  Scenic View's medical records were stored at Otero at the end of each day.
>
> (c)  At the request of Scenic View employees, Otero employees would retrieve specimens from Scenic View's back door and perform biopsies or tests.
>
> (d)  When Scenic View's pharmacy would run out of a medication, Otero's pharmacy would provide any necessary medication to Scenic View patients. Scenic View employees were permitted to pick up medication from Otero's pharmacy without signing or paying for it, provided they specified which patient to bill for the medication.

7

(e) Otero's pharmacy staff performed quarterly inspections of Scenic View's pharmacy.

(f) Otero employees performed all necessary building maintenance at Scenic View.

(g) The computers used by Scenic View were labeled "property of GCRMC."

(h) Scenic View employees used a charting program called Cerner, which was administered through Otero's website.

(i) Otero's billing department handled patient billing for both Otero and Scenic View.

(j) At the request of Jim Baker, at least one Scenic View employee was required to work for Otero.

(k) At least six Otero employees were required to work for Scenic View due to understaffing.

*See* Ms. Collins' Supplemental Response, ¶¶ 3, 9, 10, 11, 12, 17, 18, 19, and 23; Otero's Supplemental Reply, p. 1.

28. While employed by Scenic View, Ms. Collins was required to take competency tests and online training classes administered by Otero. *See* Ms. Collins' Supplemental Response, ¶¶ 13, 19; Otero's Supplemental Reply, p. 1.

29. While employed by Scenic View, Ms. Collins was not given an employee handbook. *See* Ms. Collins' Supplemental Response, ¶ 14; Otero's Supplemental Reply, p. 1. When she asked Ms. Beyen - Scenic View's nursing supervisor - about ASV policies, Ms. Beyen referred Ms. Collins to Otero's website and instructed her to follow those policies. *Id.*[7]

30. Ms. Beyen attended weekly meetings held by Otero and occasionally updated Scenic View employees as to the nature of the meetings. *See* Ms. Collins' Supplemental Response, ¶ 20; Otero's Supplemental Reply, p. 1.

---

[7] Otero proffered a copy of a separate Scenic View employee handbook as Exhibit E to its Motion for Summary Judgment. Ms. Collins objected on the ground that Otero failed to lay an adequate foundation for the exhibit. The Court agrees and has therefore disregarded the exhibit.

8

31.     The letter sent by ASV to Ms. Collins claiming she abandoned her job was printed on letterhead that describes Scenic View as "[a] Division of GCRMC."  *See* Ms. Collins' Supplemental Response, ¶ 16; Exhibit 3 to Ms. Collins' Response (Docket No. 1131), p. 5 of 9.

32.     Otero's website lists Scenic View as a department within Otero.  *See* Ms. Collins' Supplemental Response, ¶ 21; Otero's Supplemental Reply, p. 1.

33.     The website of Interventional Management Services, LLC - one of the owners of ASV - describes ASV as "[a] joint venture between physicians and a community hospital."  *See* Ms. Collins' Supplemental Response, ¶ 25; Otero's Supplemental Reply, p. 1.

34.     In 2011, Ms. Collins called Otero to request copies of her medical records.  *See* Ms. Collins' Supplemental Response, ¶ 15; Otero's Supplemental Reply, p. 1.  Ms. Collins was informed that her ASV medical records were located in Otero's records department.  *Id.*  The employee with whom she spoke explained the records were stored together because Otero and ASV were "one in the same."  *Id.*

DISCUSSION

Ms. Collins argues Otero is liable for Scenic View's alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and the New Mexico Human Rights Act ("NMHRA"), N.M.S.A. 1978 § 28-1-1, et seq.  In support of this theory, she contends that Otero and Scenic View constitute "joint employers," or in the alternative, a "single employer."  By its Motion for Summary Judgment, Otero seeks to establish it was not her employer under either standard.

I.     Whether Otero and Scenic View Constitute a Single Employer

"The plaintiff in an employment discrimination case carries the burden of establishing that the defendant was his [or her] employer."  *Florez v. Holly Corp.,* 2005 WL 3047965, *1

9

(10th Cir. 2005) (citing *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 n.2 (10th Cir. 1998)).

Ms. Collins, an employee of Scenic View, seeks to hold Otero liable by "arguing that the two

entities effectively constitute a single employer." *Bristol v. Bd. of County Comm'rs of the

County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002).

"The law allows businesses to incorporate to limit liability and isolate liabilities among

separate entities." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir. 1993). A strong

presumption exists that one company is not the employer of another company's employees, "and

the courts have found otherwise only in extraordinary circumstances." *Id.* "In order to hold [a]

… company liable as an employer, [that company] must exercise a degree of control that exceeds

that normally exercised by a parent [or similarly related] corporation." *Florez v. Holly Corp.,*

2005 WL 3047965, *1 (citing *Lockard*, 162 F.3d at 1071 n.2).

Courts consider four factors when determining whether two related entities constitute a

single employer: "(1) interrelations of operations; (2) common management; (3) centralized

control of labor relations; and (4) common ownership and financial control." *Sandoval v. City of

Boulder*, 388 F.3d 1312, 1322 (10th Cir. 2004). "The third factor is considered to be highly

determinative." *Florez,* 2005 WL 3047965, *1 (citing *Bristol*, 312 F.3d at 1220); *Skidmore v.

Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (noting that courts have

focused almost exclusively on the third factor). "The critical question is, what entity made the

final decisions regarding employment matters relating to the person claiming discrimination?"

*Frank*, 3 F.3d at 1363 (further quotation omitted).

### 1. Centralized Control of Labor Relations

To satisfy the control of labor relations prong, the alleged employer must control the day-

to-day employment decisions of the subsidiary or related entity. *Frank,* 3 F.3d at 1363. "[T]he

10

right to terminate employment is the most important aspect of …[such] control." *Sandoval,* 388

F.3d at 1323; *Bristol*, 312 F.3d at 1219-1220 (finding a "complete lack of control over labor

relations" where one entity had no influence over the hiring and firing decisions of another).

Other essential aspects of the employment relationship include the right to assign duties and

impose discipline, set the employee's schedule, and determine compensation and benefits. *See*

*Chapman v. A.S.U.I. Healthcare and Development Center,* 2014 WL 351868, *1 (5ᵗʰ Cir. 2014)

(discussing the meaningful aspects of the employment relationship).[8]

      Here, the facts not subject to genuine dispute demonstrate that Otero did not control any

meaningful aspects of the employment relationship between Scenic View and Ms. Collins.

Scenic View - not Otero - determined Ms. Collins work duties, assignments, compensation,

schedule, and health benefits.  ASV, the owner of Scenic View, issued all of Ms. Collins

paychecks.  Otero did not evaluate Ms. Collins' work performance or impose any disciplinary

action against her after she began working for Scenic View.  Ms. Collins admitted that part of the

reason she resigned from Otero was because she had problems with her supervisor at Otero,

which suggests she expected to be free from Otero management at Scenic View.  Further, Otero

had no influence over the employment decisions implicated in Ms. Collins' discrimination suit.

After March 2007, Otero did not have the right to hire or fire Ms. Collins, nor could it determine

whether she was entitled to leave time to accommodate her medical issues.[9]  Scenic View, not

Otero, made any decisions that led to Ms. Collins' separation from Scenic View.

---

[8] *See also Tokash v. Foxco Ins. Management Services, Inc.,* 2012 WL 1677437, *6 (M.D.Pa. 2012)
(important aspects of the employer-employee relationship include the "authority to hire and fire
employees, promulgate work rules and assignments, set … compensation benefits, and hours, …
supervis[e] employees, … including discipline, and control … records, payroll, insurance, [and] taxes").
[9] Ms. Collins attempted to dispute many of the aforementioned facts by contending that two affiants - Jim
Baker and Karen O'Brien - lacked the requisite personal knowledge to testify to such facts.  This
argument is unavailing.  Under the personal knowledge standard, affidavit testimony is only inadmissible
"if the witness could not have actually perceived or observed that which he [or she] testifies to." *Argo v.*

Ms. Collins points out that she was required to take competency tests administered by Otero and follow the policies set forth on Otero's website. She also contends that several employees worked for both Scenic View and Otero, that she was allowed to take advantage of discounts available to employees of Otero, and that Otero administered Scenic View's retirement plan. Such facts, even if true, do not demonstrate the degree of commonality and control necessary to show centralized control of labor relations. The Tenth Circuit has declined to find centralized control of labor relations where a parent promulgates general policies to be implemented by its subsidiary, requires employees of its subsidiary to undergo random drug testing, and/or provides training to the employees of its subsidiary. *See, e.g., Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1363 (10th Cir. 1993) ("A parent's [or related entity's] broad general policy statements regarding employment matters are not enough to satisfy [the control] prong."); *Florez v. Holly Corp.,* 2005 WL 3047965, *1 (10th Cir. 2005) (parent, who mandated random drug testing for the employees of its subsidiaries and managed subsidiaries' retirement plans, did not exercise sufficient control over labor relations to justify treating the entities as a single employer); *Evans v. McDonald's Corp.,* 936 F.2d 1087 (10th Cir. 1991) (finding no control of labor relations despite the fact that McDonalds "stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees").[10]

---

Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1200 (10th Cir. 2006). As the administrator and director of Scenic View, Jim Baker was responsible for evaluating Ms. Collins' performance. *See* Collins Deposition at 8:15-18. He was therefore personally familiar with whether, and to what extent, Scenic View supervised Ms. Collins. Similarly, Karen O'Brien - Otero's Director of Human Resources - is more likely than anyone to know which employees were hired, fired, and supervised by Otero.

[10] *See also Lambertsen v. Utah Dept. of Corrections,* 79 F.3d 1024, 1028-1029 (10th Cir. 1996) (finding "no evidence [of] … centralized control of labor relations" where one entity conducted background investigations on another entity's employees and required such employees to sign a written code of conduct); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1071 (10th Cir. 1998) (declining to find centralized

Further, the fact that at least one employee of Scenic View was asked to work for Otero and several Otero employees were asked to work for Scenic View does not demonstrate centralized control of labor relations. "An organization's ability to control which employees of a … partner are assigned to work for that organization … does not grant the kind of control … that would justify treating the two entities as a single employer." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1323 (10th Cir. 2004).[11] Serving as a retirement plan administrator or providing other incidental benefits to another entity also does not evidence excessive control over employment practices. *Frank,* 3 F.3d at 1363 (evidence that one entity served as the administrator of another entity's ERISA plan does not amount to excessive control over employment practices).[12]

Otero presented ample evidence that it had no control over Scenic View's day-to-day employment decisions or Scenic View's ability to hire or terminate employees. The evidence presented by Ms. Collins is insufficient to demonstrate that Otero and Scenic View had centralized control over labor relations for purposes of the single employer doctrine. This highly determinative factor therefore weighs strongly in Otero's favor.

### 2. Interrelation of Operations

Common indicia of interrelated operations include: (1) joint bookkeeping and payroll; (2) payment of one another's liabilities and bills; (3) consolidated advertising; (4) shared office space, headquarters, phone systems, services, equipment, and employee benefits; (5) common

---

control where a wholly-owned subsidiary of Pizza Hut was required to implement Pizza Hut's policies and guidelines).

[11] *See also Florez,* 2005 WL 3047965, *1 (noting that evidence that two entities shared several employees "adds little to the [single employer] analysis").

[12] *See also Kelly v. Sharon Sales, Inc.,* 1987 WL 11633, *3 (N.D.Ill. 1987) (evidence that employees of one corporation enjoyed the corporate discounts available to employees of another corporation was insufficient to raise a genuine issue of fact as to whether the two companies constituted a single employer).

employees; (6) the existence of a landlord-tenant relationship; and (7) common board meetings. *See, e.g., Frank,* 3 F.3d at 1363 (listing examples of the type of evidence routinely used to show interrelated operations); *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 n. 7 (10th Cir. 1999) (affirming finding of interrelated operations where the two companies shared "a building, phone system, reception area, office equipment, accounting department, personnel manager, personnel handbook, and payroll accounts").

Certain operations of Otero and Scenic View were interrelated. Scenic View rents office space from Otero in a building called "Gerald-Champion Complex B." That building also houses Otero's billing and Human Resource Departments. Otero and Scenic View share medical and surgical equipment. The two entities store medical records together and use the same computers and charting program. Otero provides services to Scenic View such as a maintenance, specimen testing, and patient billing. Scenic View employees are free to borrow medications from Otero's pharmacy. Otero's pharmacy staff inspects Scenic View's pharmacy. Both Otero's website and its letterhead characterizes Scenic View as a division of Otero.

Other operations were separate. Otero and Scenic View employ independent accounting firms that provide separate bookkeeping and payroll services for each entity. Neither entity pays any bills or liabilities of the other. Each entity is governed by its own board of managers or directors.

On balance, the factor addressing interrelation of operations slightly favors treating Otero and Scenic View as a single employer. Given how freely Otero and Scenic View shared equipment, services, and facilities, in some respects there was "an absence of an arm's length relationship [between] … the companies." *Knowlton ,* 189 F.3d at 1184. Nevertheless, this factor "cannot counterbalance [one entity's] complete lack of control over labor relations in

14

[another entity]." *Bristol v. Bd. of County Comm'rs of the County of Clear Creek*, 312 F.3d 1213, 1220 (10th Cir. 2002). The remaining factors must weigh in Ms. Collins favor to establish a fact issue as to the existence of a single employer.

### 3. Common Management

"[S]ome common management between the two entities … is not sufficient to satisfy the common management requirement of the single employer test." *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1071 (10th Cir. 1998). Instead, courts generally look for evidence of "identical or heavily overlapping … boards of directors." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1323 (10th Cir. 2004) (finding no common management where the heads of one department only occupied two out of seven seats on another department's executive committee); *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1364 (10th Cir. 1993) (suggesting that common management exists where common president or family controlled both companies or where "parent and subsidiary had identical list of officers and directors").

Otero and ASV are each governed by their own Board. Jim Baker, the director and administrator of Scenic View, was also the Director of Surgery Services for Otero. In the argument section of its Motion for Summary Judgment, Otero also points out that in 2009, two members of Otero's Board of Directors also served on Scenic View's Board of Managers.[13] Otero's Board of Directors has eleven members and Scenic View's Board of Managers has nine members. As noted above, the existence of two common board members and one common manager, without more, is insufficient to satisfy the common management prong. This factor is therefore insufficient to counterbalance the fact that Otero had no control over Scenic View's labor relations.

---

[13] The Court generally limits its review to those facts identified in the statement of undisputed material facts. However, because this evidence of additional common managers favors Ms. Collins, the Court considered it in ruling on Otero's Motion for Summary Judgment.

### 4. Common Ownership

Otero owns 40.5% of ASV.  It is unclear whether ASV's other stakeholders also own interests in Otero.  Courts routinely discount this factor in the absence of centralized control of labor relations, even where a parent owns 100% of the subsidiary-employer.  *See Frank,* 3 F.3d at 1364 (noting that the common ownership "factor, standing alone, can never be sufficient to establish … liability"); *Lockard,* 162 F.3d at 1071 (disregarding the fact that the parent owned 100% of the subsidiary because the record contained no evidence that the parent controlled the day-to-day employment decisions of the subsidiary).  Otero's minority ownership interest in ASV is therefore insufficient to counterbalance the control prong of the single employer test.

Considering all four factors together, and giving particular weight to the factor addressing centralized control of labor relations, the Court concludes that Ms. Collins has failed to establish a genuine issue of material fact to dispute the presumption that Otero was not her employer.  Otero is therefore not liable for discriminating against Ms. Collins under the single employer theory.

### II.     Whether Otero and Scenic View Were Joint Employers

Ms. Collins contends, in the alternative, that Otero and Scenic View were joint employers and that Otero can be held vicariously liable for Scenic View's alleged discrimination.  Under the joint employer test, "[a] plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities" each employ the plaintiff.  *Bristol v. Bd. of County Comm'rs of the County of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002).  While "the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, … the joint-employer test assumes that the

Case 11-13686-j11    Doc 1190    Filed 03/11/14    Entered 03/11/14 17:06:24 Page 16 of 18

alleged employers are separate entities." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1323 (10th Cir. 2004).

Courts applying the joint-employer test "treat independent entities as joint employers if the entities share or co-determine those matters governing the essential terms and conditions of employment." *Sandoval,* 388 F.3d at 1323 (internal quotations omitted). In other words, "courts look to whether both entities exercise significant control over the same employees." *Bristol,* 312 F.3d at 1218; *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 (6th Cir. 1997) ("The basis of the joint employer finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."). "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Bristol,* 312 F.3d at 1219 (internal quotations omitted).

As discussed above, Otero did not exercise any significant control over the essential aspects of Ms. Collins' employment relationship with Scenic View, nor did it have the right to terminate that relationship under any circumstances. Otero is therefore not liable as Ms. Collins' employer under the joint employer theory.

CONCLUSION

Based on the foregoing, the Court finds that Otero is not liable to Ms. Collins under the single employer or joint employer doctrine. The Court will therefore grant the Motion for Summary Judgment and disallow Ms. Collins' claim against Otero, to the extent such claim is based on Scenic View's alleged violation(s) of the ADA, the FMLA, and the NMHRA. The Court will enter a separate judgment consistent with this Memorandum Opinion.

17

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on: March 11, 2014

Copies to:
Jennifer Noya, Jeremy Harrison, and Bill Keleher
PO Box 2168
Albuquerque, NM 87103-1945

Miguel O Garcia
307 East 11th Street
Alamogordo, NM 88310